UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13 CR 185 |
| vs. | ) | |
| | ) | Judge John J. Tharp, |
| PETER TROOST | ) | |

**FILED**
THOMAS G. BRUTON
MAR 14 2013
CLERK, U.S. DISTRICT COURT

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant PETER TROOST, and his attorney, THEODORE A. SINARS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Plea Agreement have agreed upon the following:

### Charge in this Case

2.    The information in this case charges defendant with one count of tax evasion, in violation of Title 26, United States Code, Section 7201.

3.    Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with tax evasion, in violation of Title 26, United States Code, Section 7201.

## **Factual Basis**

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in the information.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Sentencing Guideline § 1B1.3:

Defendant Peter Troost was the owner and operator of Troost Memorials, a Schedule C business which designed and sold cemetery monuments and gravestones.  Defendant also owned the property at 9853 Gross Point Road, Skokie, Illinois, a strip mall in which Troost Memorials was located.  Defendant received rental income from a business tenant who leased space in the building.  In 2009, defendant purchased a second strip mall located at 1816-44 Arlington Heights Road, Arlington Heights, Illinois, for investment purposes.

For more than twenty-five years, defendant maintained an offshore financial account with UBS, a global financial services company headquartered in Switzerland.  Defendant opened that UBS account in 1981 and then deposited funds and maintained investments in that account until 2009, when he closed the account.  During that time period, defendant also maintained at least one other UBS account, which he held jointly with his wife.  Defendant managed his UBS accounts with the assistance of a UBS personal banker based on the island of Jersey.

From at least 1999 until 2009, defendant transferred hundreds of thousands of dollars from the United States to his individual offshore UBS account.  Defendant transferred that

2

money from the United States for the sole purpose of evading domestic income taxes. Defendant did not authorize UBS to disclose his account information to the Internal Revenue Service. At no time did defendant file with the IRS a Report of Foreign Bank and Financial Accounts ("FBAR," Form TD F 90-22.1) concerning foreign financial accounts in which he had a financial interest or over which he had signature or other authority, as he was required to do by law on an annual basis.

From at least 1999 until 2009, defendant prepared and filed his own individual federal income tax returns, in which he intentionally failed to disclose his interests in foreign accounts and falsely denied having any interests in foreign accounts. Defendant also intentionally failed to report any of the interest income earned on the millions of dollars that he maintained on deposit in his offshore UBS account. In addition, defendant intentionally failed to report all of his domestic business income from Troost Memorials and all of his domestic rental income from the two strip malls that he owned.

With respect to calendar year 2007, defendant received gross income of at least $647,040, consisting, at least in part, of interest earned from his deposits in his offshore UBS account and income from his domestic business. By reason of that income, defendant was required by law, following the close of calendar year 2007 and on or before April 15, 2008, to make an income tax return to the IRS and to pay the income tax due and owing thereon. Based on the income received by defendant in calendar year 2007, he owed income tax to the United States in the total amount of at least $212,503.

During calendar year 2007, and continuing until at least April 15, 2010, at Skokie, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant, a resident of Skokie, Illinois, willfully attempted to evade and defeat at least $193,641 in income tax due and owing by him to the United States, and the payment thereof, for calendar year 2007, by committing the following affirmative acts, among others:

    a.    maintaining a secret Swiss account with UBS, to which defendant transferred income earned in the United States, and on which defendant earned additional interest income in that offshore account;

    b.    preparing and filing a U.S. Individual Income Tax Return (Form 1040 with schedules) for calendar year 2007, which contained materially false statements, among them:

    i.    on line 22, that defendant's total income was $80,271.35, when in fact, as he knew, his total income during 2007 was materially greater than $80,271.35 due to unreported income from the interest earned from his deposits in his offshore UBS account and unreported business income; and

    ii.    on Schedule B, line 7a, that defendant did not have an interest in a financial account in a foreign country, when in fact, as he knew, he had an interest in at least one offshore UBS financial account;

c.       preparing and filing a U.S. Individual Income Tax Return (Form 1040 with schedules) for calendar year 2008, which contained materially false statements, among them:

i.       on line 22, that defendant's total income was $60,802.37, when in fact, as he knew, his total income during 2008 was materially greater than $60,802.37 due to unreported income from the interest earned from his deposits in his offshore UBS account, unreported business income, and unreported rental income; and

ii.       on Schedule B, line 7a, that defendant did not have an interest in a financial account in a foreign country, when in fact, as he knew, he had an interest in at least one offshore UBS financial account; and

d.       preparing and filing a U.S. Individual Income Tax Return (Form 1040 with schedules) for calendar year 2009, which contained materially false statements, among them:

i.       on line 22, that defendant's total income was $211,256.86, when in fact, as he knew, his total income during 2009 was materially greater than $211,256.86 due to unreported business income and unreported rental income; and

ii.       on Schedule B, line 7a, that defendant did not have an interest in a financial account in a foreign country, when in fact, as he knew, he had an interest in at least one offshore UBS financial account.

5

The total amount of defendant's unreported domestic and offshore income and the resulting tax loss for the charged offense (year 2007) and relevant conduct (years 1999-2006 and 2008-2009) is as follows:

| Year | UBS account balance | Unreported Income | Tax Loss |
|------|---------------------|-------------------|----------|
| 1999 | $ [unknown] | $ 241,326 | $ 67,571 |
| 2000 | [unknown] | 215,910 | 60,455 |
| 2001 | 3,763,571 | 252,091 | 70,585 |
| 2002 | 4,800,750 | 265,695 | 74,395 |
| 2003 | 4,886,731 | 287,365 | 80,462 |
| 2004 | 4,931,982 | 159,476 | 49,484 |
| 2005 | 5,621,430 | 185,623 | 49,305 |
| 2006 | 6,141,586 | 484,774 | 162,402 |
| 2007 | 6,500,943 | 566,769 | 193,641 |
| 2008 | 6,203,424 | 539,098 | 181,017 |
| 2009 | 5,730,000 | 140,802 | 50,026 |
|      |           | $ 3,338,929 | $ 1,039,343 |

## Maximum Statutory Penalties

7.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum term of imprisonment of five years; a maximum fine of $250,000; the costs of prosecution, estimated not to exceed $500; and a maximum term of supervised release of three years.

b.      Defendant further understands that the Court shall order defendant to pay restitution to the United States Treasury in an amount to be determined by the Court at the time of sentencing.

6

      c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty or order of restitution imposed by the Court.

**Sentencing Guideline Calculations**

8.      Defendant understands that in imposing sentence the Court will be guided in part by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as otherwise noted:

      a.      **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

      b.      **Offense Level Calculations.**

      i.      It is the government's position that the base offense level is 22 pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(I) because the total amount of the tax loss from the charged offense and relevant conduct ($1,039,343) is more than $1,000,000, but not more than $2,500,000. Defendant reserves the right to contest the government's loss calculation at sentencing.

7

ii.     The base offense level should be increased by 2 levels under Guideline § 2T1.1(b)(2) because the offense and relevant conduct involved sophisticated means.

iii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a 2-level reduction in the offense level will be appropriate.

iv.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a 2-level reduction for acceptance of responsibility, the government will move for an additional 1-level reduction in the offense level.

c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

8

government, defendant's criminal history points equal 0 and his criminal history category is I.

        d.    **Anticipated Advisory Sentencing Guideline Range.** As calculated by the government, based on the facts now known to the government, the anticipated offense level total is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guideline range of 37-46 months of imprisonment, in addition to any term of supervised release, fine, and order of restitution the Court may impose.

        e.    Defendant and his attorney and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guideline calculations. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of those calculations.

        f.    Defendant understands that the Sentencing Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the

9

Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct such errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.     At the time of sentencing, the parties shall be free to recommend any sentence they deem appropriate.

11.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.     Pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664, defendant agrees to pay restitution arising from the offense and relevant conduct, in an amount to be determined by the Court at sentencing, to the United States Treasury. Defendant understands that the amount of tax loss as calculated by the IRS may exceed the amount of tax due as calculated by the Court for restitution in this criminal case.

13.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States

Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15.     Defendant further agrees to pay the United States Treasury, prior to the date of sentencing, a civil money penalty in the amount of $3,250,471, which represents 50% of the highest year-end balance of defendant's offshore UBS account between calendar years 2006 and 2009 (that is, 50% of $6,500,943, the UBS account balance as of December 31, 2007), in order to resolve his civil liability for willfully failing to file annual Reports of Foreign Bank and Financial Accounts for calendar years 2006 through 2009.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 185.

17.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim,

demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

18. Defendant understands that nothing in this Plea Agreement shall limit the IRS in its collection of any taxes, interest, or penalties from defendant or defendant's corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

12

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

13

be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      c.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

      d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

14

## Presentence Investigation Report/Post-Sentence Supervision

20.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide his financial information, may be used as a basis for denial of a reduction for acceptance of responsibility under Sentencing Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

22.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed

subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the tax returns and tax return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

23.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24.     Regarding matters relating to the IRS, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or defendant's corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

      a.     Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

      b.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure to the IRS of documents,

testimony, and related investigative materials that may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn over those materials to the IRS for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or his corporations.

### Conclusion

25.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to

17

void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.     Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

28.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

29.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: _3 -/4 -/3_____

GARY S. SHAPIRO
United States Attorney

PETER TROOST
Defendant

BRIAN R. HAVEY
Assistant United States Attorney

THEODORE A. SINARS
Attorney for Defendant

18